IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THOMAS JERRY GIBSON, JR.                                                                    PLAINTIFF

v.                                        NO. 4:05CV01922 JLH

REGIONS FINANCIAL CORPORATION
d/b/a REGIONS BANK                                                                          DEFENDANT

**OPINION**

Jerry Gibson brought this action against Regions Financial Corporation and Regions Bank alleging malicious prosecution, abuse of process, defamation, civil conspiracy, invasion of privacy, and civil rights violations under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Regions has moved for summary judgment on all claims. In his response to the motion for summary judgment, Gibson abandoned his claim for invasion of privacy but opposes summary judgment as to all other claims. For the following reasons, this Court grants Regions's motion for summary judgment.

**I.**

For many years, Jerry Gibson had a floor-plan financing agreement with Regions in order to finance his business, The Car Store, Inc. Gibson was to pay interest until he sold a vehicle, at which point he was to pay Regions the principal and interest due. If Gibson complied with this agreement, he remained "in trust." If Gibson did not pay Regions when he sold a vehicle, he was "out of trust." Regions's security interest extended to the vehicles, proceeds from the vehicles, and documentation related to the vehicles. At the beginning of their business dealings, Regions allowed Gibson to keep the manufacturer's statement of origin and car titles to new vehicles at the dealership. However, if Gibson was "out of trust," he would have to provide that documentation to Regions.

Gibson's business began having serious financial trouble in 2003, and by October or November, Gibson realized he would likely have to sell his business or file for bankruptcy. At some point in late 2003, as Gibson tried to make his business work, he was "out of trust" and thus in violation of his financing agreement with Regions. Regions first discovered that Gibson was "out of trust" during a monthly floor-plan check, according to Gibson, in December 2003.[1] Gibson testified that Jeanna Eddleman of Regions called him at the dealership about the floor-plan problem. Gibson went to Regions and told Eddleman that he was trying to sell the business so he "could square up everything with the bank." Gibson testified that he had a similar conversation with Brad Payne at the dealership. Regions's attorney Dale Douthit prepared a Forbearance Agreement that gave Gibson until March 1, 2004, to try to sell the business. In the Forbearance Agreement, the parties agreed that Gibson was "at least $200,000.00 out of trust." Gibson never sold the business and never repaid the debt to Regions. During this time, Gibson was terminating his employees, his business was being sued for unpaid debts, and he was in the midst of a child-custody lawsuit. After the forbearance agreement expired on March 1, 2004, Regions filed an action for replevin. On the day the replevin action was filed, Regions received an order of delivery in the action and began to take possession of the collateral.

On March 4, 2004, the *Russellville Courier News* published an article about Gibson's financial problems and the lawsuit with Regions. The parties agree that the article was accurate. The parties also agree that by March 2004, "it was pretty common public knowledge" that Gibson and his business "were having some serious financial problems," and it looked like "his business was over." Around that time, Gibson's ex-wife asked a babysitter to tell their son about what was being

---

[1] Regions says that the floor-plan check during which it discovered that Gibson was "out of trust" occurred in January 2004.

reported in the newspaper so the son would not hear about it first at school. Coincidentally, the babysitter's mother worked for Regions in Russellville as a manager.[2] The babysitter's statements to the son were "[y]our father is going out of business and he is going bankrupt if he does not sell it." Gibson filed a Chapter 7 bankruptcy petition in April 2004. He was discharged from bankruptcy in January 2005. According to Regions, the unpaid debt that was discharged through the bankruptcy was almost $400,000.

In March 2004, Douthit told Regions that he believed that he should notify Pope County Prosecuting Attorney David Gibbons of Gibson's conduct so that Gibbons could determine whether Gibson had committed a crime by defrauding a secured creditor under section 5-37-203 of the Arkansas Code, which provides that disposing of property subject to a security interest with the purpose of hindering enforcement of the security interest is a Class D felony. Douthit contacted Gibbons sometime in early March. Gibson does not dispute these facts but alleges that Payne also requested a criminal investigation. The evidence shows that Arkansas State Police Investigator William L. Glover met with Payne after Glover opened an investigation of Gibson at the request of the Pope County Prosecuting Attorney. On March 16 or 17, Glover requested from Regions a list of car titles that were missing from their files related to the secured vehicles. Because Payne was out of town, Jeanna Eddleman checked the files and listed one missing title on a trade-in used car and four missing titles on new vehicles. Gibson concedes these facts but asserts that Regions misled Glover into believing that the documents were missing.[3] Regions asserts that, after Glover received

---

[2] As a part of his now-abandoned invasion-of-privacy claim, Gibson contended that this conversation occurred in January 2004 and that the information came from Regions, not the news article.

[3] This statement of fact and response is taken from paragraph 37 of the defendant's Statement of Uncontested Material Facts and the plaintiff's response. Glover's affidavit says that

3

that list, he used that information, along with information from Gibson's former employees, to obtain a search warrant. Gibson insists that Regions knew Glover obtained the search warrant and that Payne requested an investigation.

Soon after March 17, 2004, Payne and Douthit went on The Car Store property, Regions contends, with permission of Gibson's counsel, to look for additional secured property. They were accompanied by Steve Rogers, a private process server. Gibson denies that the men were given permission by his attorney to "break into a container" on his lot. Gibson also arrived on the property and confronted Payne, alleging that Payne was responsible for Glover's search of Gibson's home. Gibson and Payne had a verbal confrontation and stared each other down, but no blows were exchanged. Gibson contends that he objected to the men being there and that there was a breach of the peace.

Gibson was never arrested and never charged with a crime. As noted above, Gibson has alleged five claims against Regions: malicious prosecution and abuse of process; violation of Privacy Act and invasion of privacy; violation of 42 U.S.C. § § 1983, 1985 and the Arkansas Civil Rights Act; and conspiracy to commit libel and slander with respect to Gibson's reputation. In his response to motion for summary judgment, Gibson abandoned his claim for invasion of privacy, leaving claims for slander, abuse of process, malicious prosecution, conspiracy, and violation of civil rights at issue on the motion for summary judgment.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

he spoke with Blake Tarpley. Tarpley's deposition says that he called Eddleman and obtained the information from her.

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

### III.

### A.     THE ANNUNZIO-WILEY ANTI-MONEY LAUNDERING ACT

Regions argues that it is exempt from liability for abuse of process and malicious prosecution under 31 U.S.C. § 5318(g)(3), the safe harbor provision of the Annunzio-Wiley Anti-Money Laundering Act.[4] The statute says:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement . . . for such disclosure or for any failure to provide notice of such disclosure or any other person identified in the disclosure.

*Id.* The Eleventh Circuit has said that this provision provides a safe harbor for three types of disclosures by a financial institution: a disclosure of any possible violation of law or regulation; a disclosure "pursuant to § 5318(g) itself;" or a disclosure pursuant to any other authority. *Lopez v. First Union Nat. Bank of Florida*, 129 F.3d 1186, 1191 (11th Cir. 1997); *cf. Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 29-30 (1st Cir. 2003) (identifying "two different categories of coverage": one for "disclosure of any possible violation of law or regulation," and one "pursuant to

---

[4] Gibson asks the Court to strike this defense in its entirety. The defense was asserted in a timely-filed answer to an amended complaint shortly before discovery closed. Gibson's motion to strike is denied.

this subsection or any other authority"). While the filing of a "suspicious activity report" is required for a disclosure pursuant to § 5318(g)(1), it is not required for any other disclosure protected by § 5318(g)(3). Thus, if a financial institution discloses to a law enforcement authority a possible violation of law or regulation, it may be exempt from liability under the statute whether or not it filed a suspicious activity report. Several courts have recognized the broad scope of exemption from liability under § 5318(g)(3). *See Stoutt*, 320 F.3d at 31; *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999); *Lopez*, 129 F.3d at 1192; *Gregory v. Bank One, Indiana, N.A.*, 200 F. Supp. 2d 1000, 1002-03 (S.D. Ind. 2002); *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 451, 109 S.W.3d 672, 680 (2003).

Citing *Lopez*, 129 F.3d at 1193, Gibson argues that the Court should interpret § 5318(g)(3) to include a requirement of good faith on the part of the financial institution. However, Congress chose not to include good faith as an element of the exemption from liability provided in § 5318(g)(3), even though an early draft of the legislation included a provision that the disclosure would be protected only if it was made in good faith. *Stoutt*, 320 F.3d at 30-31; *Lee*, 166 F.3d at 544. This Court has no authority to read into the statute a provision that Congress omitted.

Citing *Evans*, 353 Ark. at 452, Gibson argues that § 5318(g)(3) does not apply because there was no possible violation of law. However, Gibson's own testimony shows that he did not tell Regions that he was selling vehicles out of trust (until Regions discovered that fact during a floor-plan check) because he wanted to delay foreclosure. Gibson's own testimony shows that he was disposing of property subject to a security interest and that he intended to hinder enforcement of that security interest. Thus, the undisputed facts show a possible violation of section 5-37-203 of the Arkansas Code.

The undisputed facts show that Regions is exempt from liability for the act of reporting Gibson's sales out of trust to the prosecuting attorney. Moreover, even apart from the exemption provided by § 5318(g)(3), Regions is entitled to summary judgment.

**B.     MALICIOUS PROSECUTION**

The elements of a malicious prosecution claim under Arkansas law are: "(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages." *South Arkansas Petroleum Co. v. Schiesser*, 343 Ark. 492, 495, 36 S.W.3d 317, 319 (2001). It is undisputed that Gibson was never arrested nor charged with a crime. The parties cite cases of malicious prosecution in which the plaintiff had been either arrested or charged with a crime but none based solely on the issuance of a search warrant and subsequent search. The Restatement (Second) of Torts explains:

> Criminal proceedings are instituted when (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocense; or (b) without the issuance of process an indictment is returned or an information filed against him; or (c) he is lawfully arrested on a criminal charge.

RESTATEMENT (SECOND) OF TORTS § 654 (1977). The previous section of the Restatement, which states the elements of a malicious prosecution claim, makes the observation that "[t]he making of the charge is not actionable, however, under the rule stated in this Section unless a prosecution actually results from it, or, in other words, unless criminal proceedings are instituted against the accused by the tribunal or official before whom the charge is made in one of the ways described in § 654." *Id.* § 653 cmt. c. Likewise, the Arkansas Supreme Court has stated that for a plaintiff "to prevail he must allege and prove that he was prosecuted and that the prosecution resulted in a

7

decision in his favor." *Headrick v. Wal-Mart Stores, Inc.*, 293 Ark. 433, 435, 738 S.W.2d 418, 420 (1987). Gibson bases his claim for malicious prosecution against Regions on the fact that Regions provided information to Officer Glover that he used to obtain a search warrant, but that fact is insufficient as a matter of law to give rise to a claim of malicious prosecution because no proceeding was instituted against Gibson. Regions is entitled to summary judgment on the malicious prosecution claim because it is undisputed that Gibson was never prosecuted.

**C.    ABUSE OF PROCESS**

Like his claim for malicious prosecution, Gibson's claim for abuse of process is based on the fact that Regions employees provided information to Glover that was included in the search warrant. The elements of a claim for abuse of process under Arkansas law are: "(1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure [was] perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act [was] perpetrated in the use of process which is not proper in the regular conduct of the proceeding." *Schiesser*, 343 Ark. at 501, 36 S.W.3d at 323; *see also Union Nat. Bank of Little Rock v. Kutait*, 312 Ark. 14, 16, 846 S.W.2d 652, 654 (1993). Glover's affidavit states:

> The Affidavit for a Search Warrant was my decision. No employee of Regions Bank ever requested or suggested a search warrant. No employee of Regions Bank stated that they believed the missing titles were at Mr. Gibson's residence; that was my suspicion. I did not tell any employee of Regions Bank why I was requesting a search warrant or when I was requesting a search warrant. I did not tell any employee of Regions Bank what I had learned from any other witnesses in my investigation, including the other witnesses listed in the Search Warrant Affidavit. No employee of Regions Bank was involved in any way in the decision to search, or the actual search of, Mr. Gibson's residence.

Gibson has presented no evidence to contradict this paragraph of Glover's affidavit. Glover relied on statements made by Payne, Tarpley, and Douthit for part of the affidavit that he used to get a search warrant for Gibson's home. Glover also relied on statements made by two of Gibson's former

employees in his affidavit. Gibson argues that Glover was misled about the exact status of the missing documentation for vehicles that had been sold but presents no evidence to contradict Glover's testimony quoted above. There is no evidence that Regions instigated the decision to obtain a search warrant or perverted the warrant to accomplish an ulterior purpose. Regions is entitled to summary judgment on the claim of abuse of process.

## IV.

Whether libel or slander, the elements of a defamation claim in Arkansas are: "'(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages.'" *Northport Health Services, Inc. v. Owens*, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004) (quoting *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402-03 (2002)). The difference between libel and slander is that libel is "the publication of defamatory matter by written or printed words" while slander is the spoken word. *Parkman v. Hastings*, 259 Ark. 59, 62-63, 531 S.W.2d 481, 483 (1976).

Gibson bases his defamation claim on statements made by Blake Tarpley and Brad Payne. Tarpley spoke to Officer Glover when Glover was gathering information to obtain a search warrant and provided information about five vehicles he believed were missing from The Car Store. Assuming that Tarpley's statements to Glover were untrue, Gibson has produced no evidence that Tarpley knew that his statements were false or that he was negligent in failing to ascertain the truth of his statements before making them. *See* AMI CIVIL 407 (2007).

During the confrontation between himself and Gibson on the grounds of The Car Store, Payne called Gibson something along the lines of a liar and a thief (accounts differ as to the exact words). Dale Douthit and the private process server Steve Rogers were present during the

confrontation. Assuming that the statements were defamatory, were published by the defendant, that the defendant was at fault for the publication, and that the statements were false, there is no evidence of damage to Gibson's reputation. Under Arkansas law, a plaintiff is required to show actual damage to reputation to have a successful defamation claim. *Faulkner*, 347 Ark. at 955-57, 69 S.W.3d at 403; *United Ins. Co. of America v. Murphy*, 331 Ark. 364, 370, 961 S.W.2d 752, 756 (1998). Gibson has provided no evidence that either Douthit or Rogers held him in lower regard as a result of Gibson's comments. Gibson provides no evidence of damage to his reputation in the community as a result of the alleged defamation.

Gibson has produced an affidavit from his wife in which she says that she was confronted at the ballpark about her husband being a thief, that she did not know whom to believe, and that the allegations about him being a thief caused her to doubt his reputation and damaged their relationship. However, in her deposition Mrs. Gibson described the man at the ballpark as "someone that represented Brad in some way. I don't know if he was an attorney or a bank person . . . he was the one who ultimately calmed Brad down." This man "apologized for Brad" and said "that he was a blowhard, basically. He was, you know, not acting professional." Mrs. Gibson testified that her understanding of what happened came from this man and from her husband. She did not testify that this man told her anything in addition to or different from what her husband had told her. Regions is not liable for damage resulting from what Gibson told his wife regarding what Payne said to him. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 113 at 802 (5th ed. 1984) ("Ordinarily the defendant is not liable for any publication made to others by the plaintiff himself, even though it was to be expected that he might publish it."); David P. Chapus, Annotation, *Publication of Allegedly Defamatory Matter by Plaintiff ("Self-Publication") as Sufficient to Support Defamation Action*, 62 A.L.R. 4th 616 (1988); *see also O'Connor v. Clorox Co.*, 14 Fed.

10

App'x 745 (8th Cir. 2001). There is no evidence that the subsequent conversation in the ballpark added anything to Mrs. Gibson's knowledge of the accusations or somehow damaged his reputation in her eyes independently from what Gibson, himself, had told her. Regions is entitled to summary judgment on the defamation claim.

## V.

Gibson claims that he was denied his civil rights under the Arkansas Civil Rights Act as well as under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 because his personal property was destroyed when Officer Glover searched his home. To have a successful claim under 42 U.S.C. § 1985(3), Gibson must prove:

> (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges or immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States.

*Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005). Such a claim requires proof of a class-based animus. *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004); *Adams ex. rel. Harris v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 774 (8th Cir. 2001). Gibson has presented no evidence of such animus in this case; therefore, Regions is entitled to summary judgment on Gibson's claim under § 1985.

The Arkansas Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

ARK. CODE ANN. § 16-123-105(a) (Repl. 2006). The statute also provides that "[w]hen construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil

11

Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983 . . . ." *Id.* § 16-123-105(c). Therefore, this Court will construe the Arkansas Civil Rights Act to require the same elements as 42 U.S.C. § 1983. The essential elements of a § 1983 action are "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

Typically, the conduct of private citizens does not constitute action under color of law unless the private party "'acted together with or . . . obtained significant aid from state officials' who engaged in conduct that is 'otherwise chargeable to the State.'" *Audio Odyssey, Ltd. v. Brenton First National Bank*, 245 F.3d 721, 739-40 (8th Cir. 2001) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 1827, 73 L. Ed. 2d 482 (1992)). "[A] plaintiff must show that the private party acted in concert with or obtained significant aid from state officials who were themselves involved in a constitutional violation." *Id.* at 740. As noted above, Glover's affidavit establishes that no employee of Regions "was involved in any way in the decision to search, or the actual search of, Mr. Gibson's residence." Regions provided some information to Glover but otherwise had nothing to do with obtaining or executing the search warrant. "[T]he mere furnishing of information by a private party to a law enforcement official, even if the information is false, is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983." *Young v. Arkansas Children's Hosp.*, 721 F. Supp. 197, 198 (E.D. Ark. 1989) (citing *Mark v. Furay*, 769 F.2d 1266, 1273 (7th Cir. 1985)).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106

S. Ct. at 2552. If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidence that designates "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Other than conclusory statements that Payne requested the investigation, Gibson has provided no evidence of a conspiracy between Glover and Payne, Tarpley, or Douthit to substantiate a claim against Regions under § 1983. Therefore, Regions is entitled to summary judgment on the § 1983 and Arkansas Civil Rights Act claims.

## VI.

Finally, Gibson alleges in his complaint that employees of Regions conspired with each other to libel and slander him and deprive him of his civil rights and that Regions conspired to destroy his property during the execution of a search warrant. To prove a civil conspiracy, Gibson must show "that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 961, 69 S.W.3d 393, 406 (2002). "Since a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather, stand in either a principal-agent or employer-employee relationship with the corporation." *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001). Corporate agents cannot be liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation. *Id*. No evidence has been presented that any employee or agent of Regions was acting for his personal benefit rather than for the benefit of the corporation.

Any claim for conspiracy would have to be based on the actions of one of the employees of Regions with Officer Glover.  In addition to the basic elements of conspiracy, "[c]ivil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." *Chambers v. Stern*, 347 Ark. 395, 404, 64 S.W.3d 737, 743 (2002) (quoting *Dodson*, 345 Ark. at 445, 47 S.W.3d at 876).  "Such a conspiracy is not actionable in and of itself, but recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Id.* "'The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.  It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.'" *Colonia Ins. Co. v. City Nat'l Bank*, 13 F. Supp. 2d 891, 896 (W.D. Ark. 1998) (quoting KEETON, *supra*, § 46 at 324).  As noted with respect to the § 1983 claims, Gibson has provided no evidence of a conspiracy between employees of Regions and Officer Glover.  Regions is entitled to summary judgment on Gibson's conspiracy claims.

## CONCLUSION

For the reasons listed above, Regions's motion for summary judgment is GRANTED. Document #73.  Gibson's motion to strike is DENIED.  Document #80.

IT IS SO ORDERED this 9th day of January, 2008.

*/s/ J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE